Filed 9/23/25  P. v. Oropeza CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY OROPEZA,<br><br>    Defendant and Appellant. | F087613<br><br>(Super. Ct. No. BF104264A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Chad A. Louie, Judge.

Pensanti & Associates and Louisa Pensanti for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney, Eric L. Christoffersen, and Hannah Janigian Chavez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Anthony Oropeza appeals from an order denying his Penal Code section 1172.6[1] resentencing petition.  After the evidentiary hearing on the petition, the

---

[1] All statutory references are to the Penal Code unless stated otherwise.

trial court found Oropeza guilty of murder under an invalid legal theory. This error requires reversal of the order, and we remand the matter for a new hearing on the petition.

**BACKGROUND**

**I. Initial proceedings**

On February 4, 2004, the Kern County District Attorney filed an information charging Oropeza with the first degree murder of Jose Velasco (§ 187, subd. (a); count 1), the first degree attempted murder of Aurelio Velasco (§§ 664/187, subd. (a)/189; count 2); and conspiracy to commit first degree murder (§ 182, subd. (a)(1); count 3). As to all counts, it was alleged that the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and that Oropeza personally and intentionally discharged a firearm which proximately caused great bodily injury or death (§ 12022.53, subd. (d)). As to counts 1 and 3, it was alleged that the murder was intentional and committed while Oropeza was an active participant in a criminal street gang (§ 190.2, subd. (a)(22)).

On January 21, 2005, the information was amended to charge Oropeza with the voluntary manslaughter of Jose Velasco (§ 192, subd. (a); count 4) and assault with a firearm on Aurelio Velasco (§ 245, subd. (a)(2); count 5). As to count 4, it was alleged Oropeza personally used a firearm (§ 12022.5, subd. (a)) and the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). As to count 5, it was alleged that Oropeza personally inflicted great bodily injury (§ 12022.7).

Oropeza pleaded no contest to counts 4 and 5 and admitted all enhancements related to those counts. Counts 1 through 3 and their respective enhancements were dismissed. Oropeza was sentenced to 33 years in prison.

**II. Section 1172.6 proceedings**

In October 2021, Oropeza petitioned for resentencing under then section 1170.95. At the time, only defendants convicted of murder or attempted murder could petition for relief under that statute. (Former § 1170.95, subd. (a) (Stats. 2018, ch. 1015 (S.B. 1437),

§ 4).) However, the superior court recognized that an amendment to the statute would take effect on January 1, 2022, which would extend relief to those convicted of voluntary manslaughter. (Stats. 2021, ch. 551 (S.B. 775), § 2.) Thus, the superior court accepted the petition and ordered the district attorney to file a response to the petition 60 days after January 1, 2022.

Oropeza used a form to prepare his petition that required him to check boxes to assert his basis for relief. Based on the boxes checked, he alleged 1) that a complaint or information was filed against him allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, 2) that he pled no contest to first or second degree murder rather than going to trial because he believed he could have been convicted of first or second degree murder at trial under the felony murder rule or the natural and probable consequences doctrine, and 3) that he could not now be convicted of either first or second degree murder because of changes to sections 188 and 189. The trial court found he had made a prima facie case for relief and issued an order to show cause.

At the evidentiary hearing, the prosecution submitted as evidence the transcript of Oropeza's two-day preliminary hearing. The trial court admitted the transcript but stated it would not consider evidence admitted at the preliminary hearing under section 872. The prosecution also called Aurelio Velasco to testify at the evidentiary hearing. No other witnesses were called.

### A. Facts of the crimes

Section 1172.6, subdivision (d)(3), provides that "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (d) of Section 872 shall be excluded from the" evidentiary hearing on a section 1172.6 resentencing petition as hearsay, "unless the evidence is admissible pursuant to another exception to the hearsay rule." Section 872, subdivision (b), allows a probable cause finding at a preliminary hearing to be based on a police officer's testimony.

3.

### 1.  Preliminary Hearing Evidence

All six of the preliminary hearing witnesses here were police officers.  Thus, most of the preliminary hearing testimony was inadmissible for purposes of the section 1172.6 evidentiary hearing.  Even so, we summarize all of the preliminary hearing testimony for context.

On the evening of September 9, 2003, Oropeza was riding in a red Honda with Juan Garcia and Gilbert Vasquez in McFarland.  All three were members of the Myfa gang.  They first drove to the intersection of Kern Avenue and San Pedro Street, where they confronted a group of youths, asking whether they were Southside gang members.  The Myfa group then left the area but soon returned.

Around that time, brothers Aurelio and Jose Velasco drove up in a white Chevrolet Corsica.  Aurelio was the driver, Jose the passenger.  Aurelio was a Southside member; Jose was not but still went by a moniker.

Aurelio got out of the Chevrolet, and Oropeza asked Aurelio if he was a Southside member.  Aurelio said he was, and Oropeza shot him in the throat with a chrome handgun wrapped in a blue cloth.  Aurelio fell to the ground, and additional gunshots followed.  Aurelio and Jose were unarmed.

Jose was also shot during the confrontation and died shortly afterward.  Aurelio survived.  The evidence of who shot Jose was inconsistent.  Gilbert Vasquez, who was riding in the red Honda with Oropeza and Garcia, said that Garcia was the only one who shot Aurelio and then shot Jose, and Oropeza also fired a 12-gauge shotgun at Jose, retrieved from the Honda after the initial shooting.  Another eyewitness witness, Joel V., said that Garcia shot both Aurelio and Jose.  Joel V. never mentioned a second shooter.  A third witness, a 10-year-old boy, said he saw two shooters—one with a handgun and one with a rifle or shotgun.  Aurelio said he saw no one besides Oropeza with a gun, but he did not see who shot Jose.

4.

### 2. Evidentiary Hearing Testimony

Aurelio was the only witness called at the section 1172.6 evidentiary hearing. He testified that Oropeza shot him in the neck and that he now has trouble speaking. His brother Jose was also shot multiple times and died. He knew Oropeza was the person who shot him because before blacking out he heard Jose yell Oropeza's name. He also identified Oropeza as his shooter in a mugshot while he was in the hospital. He knew Oropeza was from McFarland and was a rival gang member. He testified he could not remember much about the shooting as it had been 20 years. He did not recognize Oropeza in court.

### B.     Trial court's ruling

The trial court heard argument from the parties and later issued a four-page written ruling denying Oropeza's petition. The court first stated that under section 1172.6, subdivision (d)(3), it could consider preliminary hearing testimony except for hearsay admitted under section 872, subdivision (b), unless such evidence is admissible under another exception to the hearsay rule. The court explained that it considered police officer testimony from the preliminary hearing about Aurelio's prior identification of Oropeza as the person who shot him in the neck, under Evidence Code section 1238.

The trial court stated its task was to determine whether, despite Oropeza having been convicted of voluntary manslaughter of Jose, the prosecution had proven beyond a reasonable doubt that Oropeza is guilty of murdering Jose under California law as amended by the changes to section 188 or 189 made effective January 1, 2019. (See § 1172.6, subdivision (d)(3).) The court held that the prosecution had "proven beyond a reasonable doubt that [Oropeza] was a major participant in the willful, deliberate, and premeditated killing of Jose Velasco and acted with reckless indifference to human life." The court explained: "It is not necessary that this court determine who actually shot Aurelio's brother Jose. Because [Oropeza] personally discharged a firearm shooting Aurelio in the neck during a gang altercation where [Oropeza] was a member of a rival

5.

gang to Aurelio and Jose, [Oropeza] was a major participant in the willful, deliberate, and premeditated killing of Jose Velasco and acted with reckless indifference to human life resulting in Jose Velasco's death."

## DISCUSSION

### I. The issues.

Oropeza contends the trial court erred in determining he was ineligible for section 1172.6 relief. He makes two assertions. First, "[t]he record is unclear as to whether [he] actually possessed a firearm or was the killer." Second, "[he] was not a major participant and did not act with reckless indifference towards human life."

To counter these assertions, the People assert that there was substantial evidence that Oropeza "was a major participant in the killing of Jose who acted with reckless indifference to human life." The People also raise an alternative basis for affirming the denial of the petition. They recognize that the trial court's denial of the petition was based on findings that relate to the post-SB 1437 felony murder rule. But since no qualifying felony offense was alleged, the felony murder rule is an inapplicable theory of murder liability here. Recognizing this problem, they contend that substantial evidence supports a finding that Oropeza is guilty of murdering Jose under a direct aiding and abetting theory, and they ask us to affirm the order denying Oropeza's petition on this basis.

We conclude the trial court committed reversible error, but not based upon any of Oropeza's claims. Instead, we conclude the error the People allude to was prejudicial because the trial court erroneously denied the petition under an invalid theory of murder. We reject the People's argument that we can affirm the order on the ground that substantial evidence supported a finding of murder liability under a direct aiding and abetting theory. We accordingly reverse the trial court's order denying the petition and remand for a new hearing.

6.

## A.       Senate Bill No. 1437 and Section 1172.6

Murder is the unlawful killing of a human with malice aforethought.  (§ 187, subd. (a).)  Malice is express "when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature."  (§ 188, subd. (a)(1).)  Malice is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."  (§ 188, subd. (a)(2).)

Senate Bill No. 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § l, subd. (f).)

To further that purpose, Senate Bill No. 1437 added three provisions to the Penal Code.  First, to amend the felony murder rule, Senate Bill No. 1437 added section 189, subdivision (e):  "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Second, to amend the natural and probable consequences doctrine, Senate Bill No. 1437 added section 188, subdivision (a)(3):  "Except [for felony murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."

7.

Third, Senate Bill No. 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above. That statute, which has since been renumbered as section 1172.6, authorizes "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts[.]" (§ 1172.6, subd. (a).)

" '[T]he defendant initiates the process by filing a petition in the sentencing court that must include three pieces of information. (§ [1172.6], subd. (b).)" (*People v. Daniel* (2020) 57 Cal.App.5th 666, 672.) First, the petition must include "[a] declaration by the petitioner that the petitioner is eligible for relief under this section, based on all the requirements of subdivision (a)." (§ 1172.6, subd. (b)(1)(A).) Those requirements are that (1) "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) "[t]he petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted of murder or attempted murder"; and (3) "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).) Second, the petition must include "[t]he superior court case number and year of the petitioner's conviction." (§ 1172.6, subd. (b)(1)(B).) And

8.

finally, the petition must state "[w]hether the petitioner requests the appointment of counsel." (§ 1172.6, subd. (b)(1)(C).)

Section 1172.6, subdivision (c), addresses the procedure for determining whether an order to show cause should issue. That provision states that "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).) If an order to show cause issues, the court "hold[s] a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts[,]" unless the parties "waive a resentencing hearing and stipulate that the petitioner is eligible to have the … conviction vacated and to be resentenced." (§ 1172.6, subd. (d)(1)—(2).) At this evidentiary hearing, each party may present new evidence, and the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under current law. (§ 1172.6, subd. (d)(3).)

## B. Analysis

The trial court's reliance on the "major participant" and "reckless indifference to human life" standard was misplaced, as that standard is tied to the felony murder rule. (See § 189, subds. (a), (e).)[2] Oropeza was not alleged to have committed any qualifying

---

[2] The felony murder rule now provides:

"A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless

9.

offense for purpose of the felony murder rule. (See § 189, subd. (a) [listing qualifying offenses].) This was error.

The error is prejudicial under the *Watson*[3] standard, which requires us to determine whether there is a reasonable probability the trial court would have granted the petition in the absence of the error. (*People v. Lewis* (2021) 11 Cal.5th 952, 973.) This standard is met here because the trial court relied on no other theories of murder liability to deny Oropeza relief and made no other findings that could support a finding of guilt on any valid theory. Also, the evidence bearing on an actual killer theory was in conflict— as there were conflicting accounts among eyewitnesses as to who shot Jose—and there was insufficient evidence at the hearing to support an aiding and abetting theory, as we will explain below.

The People argue that we can affirm the trial court's order on the ground that substantial evidence supports a finding that Oropeza is guilty of murdering Jose under a direct aiding and abetting theory. We disagree.

A defendant is liable as a direct aider and abettor of express malice murder if the defendant aided or encouraged the murder with knowledge of the perpetrator's unlawful purpose and with the intent or purpose of committing, encouraging, or facilitating the murder's commission. (*In re Lopez* (2023) 14 Cal.5th 562, 579; *People v. McCoy* (2001) 25 Cal.4th 1111, 1122 [direct aiding and abetting is based on participants' combined actus reus and aider and abettor's own mens rea].)

In contrast, a defendant is liable as a direct aider and abettor of implied malice murder if the defendant, by words or conduct, aids the commission of a life-endangering act, not the act's result. (*People v. Reyes* (2023) 14 Cal.5th at 981, 991.) The direct aider

_____

indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

[3] *People v. Watson* (1956) 46 Cal.2d 818, 836.

10.

and abettor must know that the perpetrator intended to commit *the act*, intend to aid the perpetrator in committing *the act*, know that *the act* is dangerous to human life, and act in conscious disregard to human life. (*Ibid.*)

The People contend sufficient evidence shows that Oropeza shot at both Aurelio and Jose, striking Aurelio in the neck, "which establishe[d] both the actus reus and mens rea required for aiding and abetting liability" for Jose's murder. They further explain that Oropeza's "act of shooting Aurelio aided another perpetrator in the killing of Jose because the other perpetrator was able to concentrate on killing Jose. This further establishes that he intended to aid in the other perpetrator's life-endangering act of a violent assault involving the use of deadly weapons." However, the argument is unsupported by what actually occurred at the hearing.

As mentioned, the trial court's written ruling unambiguously shows that the trial court did not make any of the factual findings needed to support a direct aiding and abetting theory. First, the court did not find that Oropeza shot at Jose, let alone that he struck him with a bullet. Indeed, the trial court stated that "[i]t is not necessary that this court determine who actually shot … Jose." It is the trial court's function in this type of proceeding to make findings, and the appellate court's function is to review those findings. (*People v. Contreras* (2015) 237 Cal.App.4th 868, 892 ["Appellate courts do not make factual findings; we review ' "the correctness of a judgment [or order] as of the time of its rendition." ' "].) "We review the trial court's factual findings at a section 1172.6 evidentiary hearing for substantial evidence." (*People v. Gudiel* (2024) 107 Cal.App.5th 848, 858.) Since the record affirmatively shows the trial court made no findings to support an aiding and abetting theory, the People are effectively asking us to comb the record for substantial evidence to support hypothetical findings that were not made. To do so in these circumstances would not be much different than us making findings in the first instance to affirm the order on alternative grounds. We decline to do so.

Also, the People's argument that Oropeza's shooting of Aurelio aided a coparticipant's shooting of Jose and simultaneously demonstrated his intent to aid in that is flawed. The argument fails because even if Oropeza's shooting of Aurelio incidentally provided a tactical advantage to another perpetrator, this does not, by itself, demonstrate an intent to aid in the killing of Jose. Indeed, the People point to no evidence in the record of an intent to aid a coparticipant in murdering Jose, nor do we see any. The absence of evidence on this element of aiding and abetting would prohibit a conviction under such a theory.

The proper remedy here is to reverse the trial court's order and remand for a new evidentiary hearing.

## II. Performance of counsel.

The unprofessional performance of Oropeza's counsel on appeal must be noted. The appellant's opening brief contains no citations to the record. This violates California Rules of Court, rule 8.204(a)(1)(C), and would have been grounds for deeming Oropeza's arguments waived. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.) Also, counsel completely failed to assert the error on which we are basing the reversal.

**DISPOSITION**

The order denying Oropeza's petition is reversed, and the matter is remanded to the trial court for a new evidentiary hearing on the petition. On remand, the parties may introduce additional evidence. We express no view on how the petition should be decided.

SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.

13.